All rise. All report to the district recess. Good morning again. This case is 66061514.  Enter. Thank you, Mayor. May it please the court. The better-meaning decision is a reminder that the test for jurisdiction under the Declaratory Judgment Act is whether the party's dispute is definite and concrete, touches the legal relations of the parties having adverse legal interests, is real and substantial, and admits of specifically through a decree of conclusive character. Isn't it also a reminder of the fact that even if there is jurisdiction, there's still discretion left to the trial judges to determine whether or not they should assert that? There is, Your Honor. And as this court held in Electrons for Imaging and Capo and other cases, that exercise of discretion has to recognize the basic principle that where parties have a dispute, the policy of the act is to resolve that dispute if there's an active dispute. Now here, the critical fact that the district court, I think, did not fully come to grips with is that Broadcom was seeking and continues to seek an exclusion order in the International Trade Commission that would mean that the exclusion of the handsets that Verizon Wireless depends on for its business. Now that's a legally protected interest because of the contract that underlies the purchase of those handsets. And had we been able to obtain a declaration from the district court that the patents were invalid or that our use of the chips in question was not infringing, that relief would have no longer been available because that adjudication would have taken precedence over anything that the ITC could have done. And it was that dispute that was at the heart of our jurisdictional argument below, and it remains very much alive today because the proceeding at the ITC has not concluded. Broadcom continues to push for an exclusion order that would cover Verizon Wireless's handsets. The International Trade Commission has announced that they're going to hold a hearing on that issue later this month. But a decision of the ITC won't bind you. That is, it doesn't have collateral estoppel effect, does it, in any court? That's true, Your Honor. But if the ITC were to enter an exclusion order and this court were not to stay, there's a statutory period for review and so forth. I'm sure you're familiar with that, the general procedure. But if that order were to go into effect, that would immediately begin to cause Verizon Wireless harm. And if it rains next year, somebody will get wet. I mean, the whole point, it seemed to me, of the trial judge's exercise of discretion seemed to be to say, wait a minute, there's a lot of ifs in all of this, what's the hurry? I think that if you review what the district court said in the transcript, the district court referred to some of these issues when talking about the jurisdictional issue. But when it referred to its exercise of discretion, the district court said, this case is before the district court in California. I think it's inappropriate to have two federal courts looking at this issue. And that was the use of discretion. It looks to me like the only harm might be if it's harm at all is if it rains, and that might resolve some of the issues and you'll still have an opportunity. But that opportunity could very well come too late for us to get effective relief. That is, we are threatened with a legally cognizable harm, a legally cognizable injury. The first question, after all, is whether the district court had jurisdiction. Well, I'm accepting that they do. The purpose of my question about whether it's the harm to you, other than wanting an answer as quickly as possible, which of course we all do, but waiting and hoping that a lot of that would be resolved and then you would be able to use or not use what's been done out to the court. But, Your Honor, that's always the case with a declaratory judgment action that a declaratory judgment plan could always be told. Perhaps they won't sue, perhaps later when they do, things will work out differently. But it's not always the case that there are pending proceedings that implicate some of the same issues. That's not always the case, and that's the basis, was it not for the district court judge to exercise their discretion, Mr. Kirk? That's true. There are not always pending cases, but the pending case that was at issue here, and the reason why it was an abuse of discretion to rely on that, that is the California litigation. The California litigation was stayed, and we learned last week that that litigation is likely to remain stayed for quite a long time because in the Princo decision, this court determined that that stay will not be lifted until all appeals are exhausted from the ITC proceeding. So we have absolutely no opportunity in that case to vindicate the interest here. Well, what if the district court judge had said, okay, I'll grant jurisdiction, but I'm going to stay this proceeding, even though I'm asserting jurisdiction, until the other ongoing proceedings, the ITC and then the district court in California are concluded. Would that have been an abuse of discretion? Well, I think in this case it would have been, Your Honor, in that to stay the proceeding solely because Broadcom was litigating against a third party. We had been excluded from the ITC proceeding where we tried to intervene to defend on liability grounds. We'd been excluded from that phase of the proceeding. The California case was stayed at the will of a third party, not Verizon Wireless's decision, but Qualcomm's decision. Qualcomm does not represent us. We cannot be forced under the due process clause to rely on Qualcomm to defend our interests. So this, I think, squarely implicates the very purpose of the Declaratory Judgment Act and the principle that this court recognized in Electronics for Imaging and COPPA, that once the requirements for jurisdiction are met, and they were met here really for a reason that the district court did not fully appreciate, that is the existence of the threat of an exclusion order, and a declaratory judgment action would have given us relief from that threat that we could not get anywhere else. The district court should have exercised jurisdiction. And as a practical matter, had the district court done so, cases that were filed after that have already gone to trial in the Eastern District of Virginia. We could very well be in a situation where we would have been able to obtain a binding adjudication about the validity of the patents and the non-infringement of our activities with respect to those patents. Going back to Judge Crow's question, you are at least a partial participant in the ITC. Does that make you pretty much the same as Phillips in that Finkel case? No, Your Honor, because we are not a respondent in the ITC. No, but I mean you're in the case. We are only in the case with respect to the remedy that the ITC might issue. We do not have an opportunity to litigate either the validity of the patents or the infringement of any of our activities. And indeed, when we tried to get into the case to do that, Broadcom vigorously opposed it, vigorously opposed intervention even as to remedy, but vigorously opposed our intervention as to liability and were able to keep us out. But you don't really care about the liability issue between Broadcom and Qualcomm as long as the remedy doesn't keep you from importing your product. Isn't that right? That is correct. And it's also the case that it won't matter in a later judicial process, will it? Your Honor, with respect to the International Trade Commission proceeding, it is true that our interest there is in our principal interest. There's not zero interest in the other, but it's certainly much more attenuated. Our principal interest with regard to the International Trade Commission is that we continue to be able to import the handsets that we use. That's a remedy problem, isn't it? It is a remedy problem, Your Honor, but the point is that if we weren't able to obtain... First of all, the ITC has already determined that the patents were valid and at least one of them was infringed by Qualcomm. The ALJ has said that. No, the ITC has adopted that finding. Has adopted it? Okay. That is now an ITC finding. The only issue that remains is remedy. Certainly at the time of the suit... So what about... It's not clear that you won't be able to get into the California suit. I mean, presumably when the ITC proceeding is completed, the California suit will resume, correct? And I would assume you would all try to intervene in that proceeding? But I think that the critical point with respect to that, Your Honor, is that in light of the decision last week, that case will not be revived until appeals are final from the ITC proceeding. That is, it's not merely an ITC determination on liability and remedy, but then exhaustion of appeals before this court, and presumably a position for certiorari if there were one, before that the stay provision would no longer be applicable. Okay, so that stay goes, but you are assuming that if the district court did have, if we were to reverse the district court and say she abused her discretion, that you'd be able to compel her to go forward immediately without staying it pending any other proceedings, right? You're telling us that even if we sent it back and she says, okay, I'll assert jurisdiction, but I'm going to stay it pending the ITC and or the California court, you would be able to come up here and tell us that she abused her discretion? Well, Your Honor, I believe that we would. The point is that because she dismissed the case holding that she had no jurisdiction over it, those issues were never reached by the district court in the first instance. But she was quite clear, was she not, that even if she had jurisdiction she would nonetheless exercise her discretion? That's correct. We're not challenging that that's properly before the court to review, but that was an abuse of discretion precisely because there was an immediate threat to Verizon Wireless from the ITC proceeding and the possibility of an exclusion order that because of the unusual relationship between ITC jurisdiction and district court jurisdiction in patent matters, a patent case would have been fully able to redress. Had Verizon Wireless been able to proceed with that case and obtained a judgment, that would have prevented the harm that was threatened by the ITC proceeding, and that's precisely what the Declaratory Judgment Act is intended to deal with. Do you have any clear cases from this court that a third-party suit is not enough in terms of the district court exercising jurisdiction? Your position is here that these third-party suits were not sufficient. Is there any case law on that? There isn't, Your Honor, simply because it's never come before this court that a court has dismissed a case simply on the basis that there was a third-party suit. And indeed, this court has recognized, of course, the principle that a third party cannot be bound and cannot be properly represented as a matter of due process by a third party. And I think the interesting point is that while there are several cases that we have cited where courts of appeals have relied on the non-identity of parties as a factor in reversing a discretionary dismissal, there is no case that we were able to find or that Broadcom was able to cite to this court where there was a situation as here where there was simply a case that had been filed against a third party and a district court said, you know what? There's a case against a third party. I'm going to exercise my discretion and let that case go forward. You can perhaps intervene there. There's no case in 70 years under the Declaratory Judgment Act that finds that to be the case. Well, that wasn't all she said, but in your response earlier to Judge Prost, you said in passing, yes, the trial judge's exercise of discretion is before us. Are you really sure that's true? If the trial court is without jurisdiction, how do we reach the question of the exercise of discretion, which could only be exercised if she has jurisdiction, which leads me then to the question, even if we thought your case had merit, don't we have to send this back to the trial judge to reexamine the jurisdictional issue in the light of metamune? You're not asking us to decide it. Let me make sure I understand. If the district court, certainly it's correct. The district court clearly went on the jurisdictional issue and said, and oh, by the way, right? Yes, that's correct, Your Honor. Certainly it would be a possible course for this court to take, I agree, to say you got it wrong on jurisdiction. We think that that jurisdictional holding may have infected your decision about discretion to send it back. I would submit that that's not the preferred course here. What is the preferred course? It would be to direct the district judge to exercise discretion in this case for the reason that we've indicated. But if the district court doesn't have jurisdiction, we can hardly say to the district judge, exercise your discretion but do it differently. Your Honor, let me make sure I understood your question correctly. My question simply is, can we reach the question of the proper exercise of discretion, which is an issue I want to come back to in just a minute, without reaching the jurisdiction question? I don't believe so, Your Honor, although I was unable to find a case on point, and I can see the argument on the other side. But I think that the better view would be that because the jurisdiction issue goes to the existence of a court's power, that the court needs to reach the jurisdiction issue before it makes a decision about discretion, particularly in light of the fact that the discretion under the Declaratory Judgment Act is remedial discretion and not discretion about whether the court has... Discretion is perhaps a misnomer. It's not a decision about whether the court has power over the case. And therefore I think that it would be inappropriate to decide the discretion issue without first determining whether the court had jurisdiction. If the question is whether Metamune has so changed the nature of the game that the district court ought to have the first crack, as it were, in determining the jurisdiction issue in light of Metamune, I guess that would be reviewed de novo by this court in any event. There's no disputed facts for the district judge to find. So I think I would submit that the jurisdictional issue is one that this court can and should resolve now. Then the discretion issue, it is possible in light of the fact that the district judge first found that it didn't have discretion and that was with some error. It would be possible to send it back to the district court to reconsider its exercise of discretion in light of a correct view of her discretion over the case. Unless we agree with the district court's exercise of discretion. In that regard, let me ask you this. You sent us Plumtree, the datamines to read our recent decision in which we affirmed, if I understand Plumtree correctly, we affirmed a trial court's exercise of discretion to grant the declaratory judgment. I'm not sure how that helps you. For example, if one of my children misbehave and I choose to spank the child for that misbehavior, but my neighbor who has a child equally obdurate chooses not to spank the child, I don't see how my exercise of discretion to do something enlightens us about my neighbor's decision. Can you explain that to me? I just don't see how Plumtree helps you, in other words. Well, Your Honor, I think that the primary reason that we brought Plumtree to the attention of the court was that the fact that the conduct in a third-party litigation helped to reinforce the reasonableness of the apprehension of suits for a jurisdiction, we thought that that was sufficiently close to the facts of this case to be helpful to the court. But it is true, certainly, that the fact that a district judge is exercising its jurisdiction despite the existence of that litigation against a third party simply goes to show that it's perfectly appropriate. It doesn't necessarily, I agree with you, it doesn't stand in opposition to the abuse. But see, that's the ultimate meaning of discretion. The ultimate meaning of discretion is that we could sit here and affirm the trial judge either way. I agree with you, Your Honor, but my point about abuse of discretion is that in this case, the only thing that the district court relied on was the existence of the litigation in California. And I was trying to find the quote from the... Well, we got it. And you're right. We've gone way over your time. We'll give you a rebuttal time back. Let's hear from... Thank you. Good morning. May it please the court, Michael Page for a broad comment. Actually, I want to start where Judge Ploeger left off on the question of whether this court needs to reach the jurisdictional issue in order to reach the discretion issue. And I think the answer is it depends on how you're coming out. I mean, if we come out for you, we can do anything we want. Right. Pretty much, Your Honor. You can affirm on the basis of finding that the court properly exercised her discretion. In order to reverse, you obviously have to reach both issues. You would have to find both that the district court was incorrect in finding jurisdiction in the first place, and then also find that the district court abused her unique and substantial discretion to decline that jurisdiction if it existed. But on affirming on abuse of discretion, isn't it fair to say that we can't tell whether or not, assuming we disagree on the first issue, on the jurisdictional question, isn't it fair to say that we can't really tell whether or not the district court's decision on discretion was infected by an erroneous view on the jurisdiction question? I mean, you could always presume, I suppose, that a district court judge had thoughts that were not in the record that somehow polluted the decision. She was very clear that she understood that if she was wrong on jurisdiction, she still would apply normal factors of discretion, and she identified the reasons why it made sense to decline jurisdiction even if it existed. I don't see why an error on jurisdiction would infect that thinking. And, in fact, she was amply supportive in that decision. Why wouldn't we vacate on the jurisdiction and send it back for her to reconsider in light of the metamune? Short answer is because it would be a waste of time if you agreed that she exercised her discretion correctly in any event. There's no point in sending it back to say when her opinion was A, and if not A, B, and send it back saying assume not A, her opinion is still going to be B. She was amply supportive in that. There are not one but two pending proceedings going on out there on the same patents on the same issues. There is both an ITC proceeding and a California federal court proceeding on the same patents. And Verizon is a party to one of those proceedings, and there is no procedural bar to their intervening in the other. In order for there to be any good reason at all for the Eastern District of Virginia to consider this case, a long string of things would have to happen. Right now Verizon has already appeared in the remedy phase before the ITC, has argued against a remedy that would affect it, and so far successfully. The ALJ's recommendation is that the remedy not reach the handsets that they import. That may change. It may not. The full commission has a hearing. But I'm having a hard time figuring out why we should be affected by that one way or another. Even if there's no liability, that doesn't dissipate the possibility that Broadcom can go into any jurisdiction tomorrow and sue Verizon, which it hasn't done yet, right? That's correct. That's true. So why should we care? Why should Verizon have, let's assume we think that otherwise they would have jurisdiction, and this is just a question of exercising to the discretion. Let's assume that under our reading of MedImmune, clearly there was sufficient reason here for Verizon to go in and have jurisdiction on a DJ. Then why should that be changed by the fact that there's another third-party suit? Why does that third-party suit in any way affect the apprehension, if that's the right test or whatever, of Verizon that it might be sued tomorrow or any time in the future and the uncertainty engendered by that by Broadcom? I do want to address the MedImmune issue later, but the simple answer is that in any infringement case, whether method or device, whether induced, contributory, or direct, against a component manufacturer, there are going to be all manner of downstream people that would be affected by it who have a financial interest in it. Any time there's an infringement suit against a chip manufacturer, everybody who puts those chips in their devices could also be affected by an adverse rule and would love to come in and argue that the patent is invalid. Every store that sells the devices is affected. Every customer is affected. That does not alone give rise to a reason that for each of those third parties to be able to bring their own declaratory judgment suits absent some threat that someone's going to sue them. Well, is Verizon selling a product that you believe infringes your patents? Verizon's put, yes. Okay, and that position was clear in the ITC record. Why isn't that enough for a D-Day? Because we believe that anyone who incorporates these chips into their products infringes, that every store who sells them infringes. That doesn't mean we're obligated to sue them all or want to sue them all. It doesn't matter what you believe. It matters what he believes. No, that's not entirely true, Your Honor. Whether he believes that he may be adversely affected doesn't change whether Broadcom has any intent to ever go sue Verizon. We have done nothing to indicate that. We have never threatened them. We have never sent them a cease-and-desist letter. We have never asked them to take a license. They have never come to us for a license and been turned down. In fact, we have never sued any downstream customer who is similarly situated to them. I've never threatened my child, but that doesn't believe I'm not going to spank the child under certain circumstances. Under Arrowhead and other cases, you don't need an express threat, do you? You need some reason to think that there is more than just infringement. In order for a declaratory judgment action to lie, you need actions by both parties. You need something by the infringer that constitutes infringement or impending infringement to create a case to talk about at all. What you have is right. Yes. And you need something by the patentee to indicate that there is any reason to think that he is going to go sue that particular infringer. Patentees regularly choose not to sue all manner of people who are infringing their patents. They are not put to the hobson's choice of they must either sue everyone who is infringing or must go enter into litigation with them to inform their choice when they choose not to. So you seem to be saying that there are a lot of factors that have to be considered. Absolutely. The judge didn't consider them because she said there was no jurisdiction. No, she... And perhaps she now, because she was going under the old law, we now have Menemew. Why doesn't the judge get a chance to reconsider her position on jurisdiction? There may be factors she didn't... And a lot has happened since then. There may be things to consider on jurisdiction that she didn't consider, but it makes no difference. She went on to consider whether if she had jurisdiction she would decline to exercise it. Keep in mind that the only threat that Verizon identifies is the chance that their products will be barred by a downstream exclusion order, the ITC. Now, that's a threat that applies to every downstream customer in every ITC case, but they're a party on that issue. They are before the ITC and are being heard on whether that... But now you're going back to the jurisdiction question, and I thought you were arguing under her discretion, that wasn't a factor in her declining to exercise her discretion, right? It seemed to me the factor she used in discretion was simply you've got two other proceedings, validity as an issue there, issue may become moot if those other, you know, forum decide in ballot. That's all, right? That was her... Her reasoning was there were two other proceedings, one of which was the ITC, and the other was California. But underlying her analysis was her assumption that there needed to be a showing of reasonable apprehension of imminent suit or something like that. Correct. Suddenly, that's no longer in play, at least as part of the underlying DJ issue. Are you suggesting that if that factor is now removed, that wouldn't have any relevance to her exercise of discretion? Absolutely. I think that goes to whether the jurisdiction existed in the first place, but I don't think it changes the analysis there. I don't think Medavine changed... Medavine changed the rules for what an infringer must do. Any case where there's already been a threat of infringement and the infringer has removed that threat by taking a license or by ceasing action, Medavine speaks to, does that person have to just stay in that position forever, or does it have to bring back the second crime, the infringement, in order to come to court? Well, I think we're talking about a different part of Medavine here, but we have the footnote where the Supreme Court... I'd suggest that is different. Well... You can say that, but I'm not sure we can. Shouldn't that be considered by the court? I thought I suggested you say it. The district court in the first instance? Uh... The district court probably should consider it had Medavine come down before then in deciding whether the jurisdiction exists. But that has nothing to do with the exercise of discretion. Here's the problem with their position on discretion. Their position is that even though they are a party in terms of the ITC, where the only harm they identify may occur, although the ALJ feels that it shouldn't, that they're not a party in California and therefore there's some due process problem. If there's a due process problem before the ITC, the place to talk about that is at the ITC. If there's something wrong with their remedy proceedings that would lead to a deprivation of property without being heard, the course there is to object to those in front of the ITC and then come to this court on an appeal from the ITC, not to go off and file a separate action. But suppose you put the ITC apart. Suppose that the California action is not sufficient because they're not a party. I'm a third party. I shouldn't be valid. I shouldn't be able to have my own case. Suppose that the Virginia case goes forward. Suppose you reverse and it goes back. Verizon's case goes forward. The next day, another cell company files suit in Texas and says, wait a minute, I'm not able to be heard on the validity of this patent. I'm a downstream user. I'm at risk. I'm not a party to the California action or the Virginia action or the ITC action. I get to get a debt relief action. And suppose the next day, Circuit City files in Ohio and says, wait a minute, I'm not a party to any of these four actions. I'm going to be adversely affected. I'm not getting heard. There's a due process problem here. If their suggested rule that a third party action... What is the due process problem? I have no idea what their due process problem is, Your Honor. You just said there is one. No, I say they say there is. Oh. If you buy that position, then every downstream user has the same problem and every downstream user gets to have his own declaratory judgment action and every one of them gets to say, you can't exercise discretion not to hear it because I'm not a party to the other cases. There's no end to that. You can have a thousand cases. Under their rule, the district court would not have discretion to get rid of any one of those cases. But wouldn't you have some collateral estoppel issues coming up in here somewhere? By the time you got to the 500th plaintiff? Right. You have a situation where my client, who has sued only its competitor and none of its customers, is faced with 500 suits in which losing any one of them has collateral effect while none of those customers are facing collateral effects in any but their own. But you are free, but your client is free, is he not, to turn around tomorrow and sue all of those downstream users himself, right? Absolutely. And you'd say there's no bar to that. So you could have the exact situation that you're talking about that you suggest is impossible, which is that you have 500 different proceedings going on at one time because you've brought suit in all of those jurisdictions to vindicate your rights with respect to each of the different defendants, right? So what's the difference? The difference there is that as the patentee, we are entitled absent a threat, an unexercised threat to sue to choose who we want to sue. And quite frankly, if we sued 500 people on the same patent, we'd end up ending up in a single location. But also in those cases, we would be putting ourselves in a position of collateral estoppel effects in each of those 500 cases. There's a downside to us to choosing that action. There's no downside to that. Well, there is a downside. You make that, basically the argument you're making, you made very nicely in your brief, your red brief. And you make the following statement after saying that hundreds or millions of sellers or users of products could, in theory, claim that they were being harmed. You then say, to be sure, there may be a difference of scale. Verizon is a very large seller of cell phone handsets, but there is no difference in principle. Well, in the exercise of discretion as to whether to do something, is it really a question of principle, or is it indeed a question of scale? That is to say, isn't scale relevant to the question of whether somebody should have a right to protect themselves? Certainly. Or an opportunity, not a right, but an opportunity to protect themselves. Certainly. I would say there's more of a thumb on one side of the scale when you have a Verizon than a customer. But not when you have a Verizon versus a cellular one versus a Sprint versus a Circuit City. One more important consideration is, if you say that the district court does not have discretion to find jurisdiction here, the stay that's congressionally mandated for ITC proceedings becomes illusory. The California case has stayed for good reason, because Congress has said you must stay district court proceedings about these patents while the ITC proceeds. If any downstream customer can go off and institute a district court action, and if the court has no discretion to stay or dismiss it, then the ITC stay is illusory. There's always going to be a downstream customer court. Thank you. Mr. Penn, to respond to that very last point, which I think is rather a difficult one from your side, that is, aren't you really trying to end around the statute that says, hold everything up while we let the ITC do its thing? No, Your Honor, because that's not what the statute says. Section 1659 says that the respondent in the ITC may seek a stay. The complainant in the ITC has no power to seek a stay. There is no general principle that a district court proceeding should be stayed. This is a provision that was put in in essence to try to accommodate the interests of foreign respondents who didn't want to have to litigate both at the ITC and the federal district court at the same time. But there is absolutely nothing about section 1659 which expresses a general principle that district court cases cannot go forward when there's an ITC proceeding. That would have been easy to write. It's not what Congress wrote. So I don't think that that is any reason for the court to decline to exercise its jurisdiction here. The other point that I think is worth responding to is something about a straw man, about the possibility of great multiplicity of suits. I think Judge Crow's answer actually gets right at it, which is this sort of thing actually happens all the time, where there are people, a large number of people with a legal claim, they may indeed sue, and there may be indeed a multiplicity of suits that raise common issues, and if they're sufficiently common, there are provisions under the federal rules for appropriate administration of that. But we don't have any multiplicity of suits here. We don't even have two suits here, because the California suit was stayed. And it was stayed indefinitely, and it remains stayed. It continues to be stayed for what is likely to be quite a long time. And I think it's worth, I emphasized in my opening argument the aspect of the ITC proceeding on its own as a basis for jurisdiction, and that's true. But it's also true, as we've argued in our briefs and as we argued below, that precisely because Broadcom identified Verizon Wireless, and I direct you in our brief at page 8, 9, and 10, and at the joint appendix at pages 270 and following, big pictures of Verizon Wireless, not someone else, not some other company. They may have identified other companies which would have had an equal interest, but they identified specifically us as infringers. That represented a considered decision on Broadcom's part that Verizon Wireless is an infringer, and of course Mr. Page has confirmed that that is their view. And there's been that sort of an explicit charge in open court that my client is infringing their patent. We are entitled. I think that on its own is a sufficient basis. He has never said to this court that he will not sue Verizon Wireless at the time and place of his choosing. He has never provided Verizon Wireless any assurance. Well, you may be entitled under the first prong as to whether or not the court was right or wrong on jurisdiction. That doesn't give you an entitlement on the discretionary prong. But they're clearly related, Your Honor, as this court recognized in Electronics for Imaging and Copy where the purposes of the declaratory judgment and action are met. There has to be a good reason for declining to exercise jurisdiction. And the only reason, and it appears on the addendum at page 17, the only reason was the mere existence of the California case, which was stayed and in which we did not, we were not a party, could not become a party because it was stayed. Thank you very much. Thank you. Page is submitted. All rise.